# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL F. REYNOLDS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:13-cv-00569-TWP-DML |
| | ) |
| CAROLYN W. COLVIN, | ) |
| | ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff, Michael F. Reynolds ("Mr. Reynolds"), requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying him Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.[1]  For the following reasons, the Court **AFFIRMS** the decision of the Commissioner.

## I.  BACKGROUND

### A.  Procedural History

On January 21, 2010, Mr. Reynolds filed a Title II application for DIB, as well as a Title XVI application for SSI.  In both applications, he alleged the onset date of his disability to be September 1, 2007.  His applications were denied initially on April 10, 2010 and again upon reconsideration on June 2, 2010.  Mr. Reynolds subsequently filed a written request for a hearing on August 20, 2010.  On December 8, 2011, a hearing was held before Administrative Law Judge T. Whitaker ("the ALJ").  Mr. Reynolds appeared and testified in person at the hearing

---

[1] In general, the court applies the same legal standards to both claims seeking Disability Insurance Benefits and claims seeking Supplemental Security Income.  However, there are separate, parallel regulations and statutes for DIB and SSI.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as the context dictates.  The same applies to citations of statutes or regulations found in quoted decisions.

and was represented by counsel. On March 1, 2012, the ALJ denied Mr. Reynolds' applications. On February 27, 2013, the Appeals Council denied Mr. Reynolds' request for review of the ALJ's decision. The ALJ's decision, for purposes of judicial review, represents the final decision of the Commissioner. Mr. Reynolds filed this civil action, pursuant to 42 U.S.C. § 405(g), for review of the ALJ's decision.

**B.     Factual Background**

Mr. Reynolds was 45 years old on the alleged disability onset date in September 2007. He has received a marginal education through the fifth grade, has past relevant work as a fabricator machine operator. Mr. Reynolds alleged, and the ALJ concurred, that he has the following severe impairments: degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine with radiculopathy, congenital stationary hip, and obesity. The ALJ found that Mr. Reynolds also has the following non-severe impairments: hypertriglyceridemia, vitamin D deficiency, nicotine dependence, sleep difficulties or sleep apnea, depression, anxiety, bipolar disorder unspecified, and cannabis dependence. Mr. Reynolds also alleges having a disability in being a slow learner. He alleges he is unable to write at all, and was only observed writing his name.

As a part of the disability application process, and due to the fact that Mr. Reynolds alleged being a slow learner, the ALJ sent Mr. Reynolds to Wayne Hoye, Ph.D. ("Dr. Hoye") to conduct a psychological consultative examination. After a thorough diagnostic interview, mental status examination, and intelligence testing, Dr. Hoye provided the following diagnostic impression: cannabis dependence and anxiety not otherwise specified. Dr. Hoye assigned Mr. Reynolds a Global Assessment Functioning ("GAF") score of 70, which indicated "some mild symptoms or some difficulty in social, occupational or school functioning, but generally

functioning pretty well, with some meaningful interpersonal relationships." ([Filing No. 14-7, at ECF p. 10](#)). Using the Wechsler Adult Intelligence Scale, Fourth Edition, Dr. Hoye determined Mr. Reynolds has a full-scale IQ score of 83, which falls within the low average range. Additional results of the testing indicated that Mr. Reynolds is able to comprehend and follow task instructions without difficulty, and that his speech and thoughts are within normal limits.

In April 2010, William Shipley, Ph.D. ("Dr. Shipley"), a state agency psychological consultant, reviewed Mr. Reynolds' case and provided an opinion. Dr. Shipley recognized Mr. Reynolds' diagnoses of anxiety and cannabis dependence, but opined that those conditions did not rise to the level of severe impairments. Dr. Shipley found that Mr. Reynolds "only had minor limitations in his activities of daily living, social functioning, and concentration, persistence, or pace," and that "he reported no episodes of decompensation." ([Filing No. 14-7, at ECF p. 19](#)). A reviewing consultant of the state agency agreed with Dr. Shipley's opinion.

In June 2011, Mr. Reynolds visited his treating physician and expressed concerns related to depression and anxiety. Mr. Reynolds' doctor conducted a formal psychological evaluation, during which Mr. Reynolds reported struggling with various mental symptoms since his father was murdered eight years ago. The doctor reported that Mr. Reynolds' speech was "pressured, but otherwise within normal limits," and that "his thought process was tangential, with somewhat loose content." ([Filing No. 14-7, at ECF p. 42](#)). The doctor offered the diagnostic impression that Mr. Reynolds suffered from bipolar disorder unspecified, cannabis dependence and nicotine dependence. He also assigned Mr. Reynolds a GAF score of 60, indicating that Mr. Reynolds suffers from "moderate symptoms or moderate difficulties in social, occupational or school functioning." ([Filing No. 14-7, at ECF p. 42](#)). Mr. Reynolds was referred to the Midtown Community Mental Health Center ("Midtown") for medical evaluation and treatment for his

3

mental impairments, but did not follow up with Midtown. He did, however, begin taking psychotropic medication which alleviated some of his symptoms of anxiety.

In an effort to properly diagnose Mr. Reynolds' physical ailments and fully understand his physical capacity for work, the ALJ sent Mr. Reynolds to Dr. Anas Safadi ("Dr. Safadi") in February of 2010. Dr. Safadi conducted a physical consultative examination. Mr. Reynolds reported to Dr. Safadi that he could not walk more than two to three blocks or stand for more than 30 minutes without pain. He complained of neck, back and hip pain. Dr. Safadi found that Mr. Reynolds displayed no difficulties walking or standing, and needed no assistive measures to do so. He displayed a normal gait and station. He displayed normal limitations of joints and extremities, and normal range of motion of his cervical spine, lumbar spine, shoulders, elbows, wrists, knees and ankles. The only indication of restriction of range of motion was in his hip. Mr. Reynolds' hip range of motion was "impaired bilaterally, secondary to pain." ([Filing No. 14-7, at ECF p. 3](Filing No. 14-7, at ECF p. 3)). He had normal grip strength and sensation to light touch. Dr. Safadi provided the following diagnostic impression: neck pain, back pain, pinched nerve, degenerative disc disease and congenital stationary hip. Dr. Safadi acknowledged that Mr. Reynolds' symptoms were affecting his quality of life and warranted further attention. Despite Dr. Safadi's recommendation to seek treatment, Mr. Reynolds never followed up with any medical treatment.

In March of 2011, Mr. Reynolds was sent to obtain objective images of his spine following complaints of neck and back pain. The images revealed Mr. Reynolds suffers from multiple cervical and lumbar spinal conditions, including but not limited to: disc space narrowing, multi-level spine changes, mild to moderate spinal canal stenosis of the lumbar spine, minimal right neuroforaminal compromise of the cervical spine, and mild left neuroforaminal compromise of the cervical spine. A. Dobson, M.D. ("Dr. Dobson"), a state agency medical

consultant, considered all of these physical impairments as factors in his opinion of Mr. Reynolds' physical limitations and capacities. Dr. Dobson opined that, despite Mr. Reynolds' severe and non-severe impairments, he is still capable of performing work at the light exertion level. According to Dr. Dobson, Mr. Reynolds can lift and carry twenty pounds occasionally and ten pounds frequently, stand and walk six hours in a workday, and sit six hours in a workday. Dr. Dobson opined that Mr. Reynolds should never climb ladders, ropes or scaffolds, but can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. ([Filing No. 14-7, at ECF p. 13](#)). Dr. Dobson advised that Mr. Reynolds should avoid concentrated exposure to workplace hazards, such as height and moving machinery. ([Filing No. 14-7, at ECF p. 15](#)). He also found that Mr. Reynolds has no manipulative, visual or communicative limitations. ([Filing No. 14-7, at ECF p. 14-15](#)).

## II. DISABILITY AND STANDARD OF REVIEW

In order to qualify for DBI or SSI, a claimant must demonstrate that he has a disability. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A). A claimant seeking disability benefits must demonstrate that his limitations prohibit him not only from performing his previous work, but all other kinds of gainful employment that exist in the national economy, considering his age, education and work experience. 42 U.S.C. § 423 (d)(2)(A).

The ALJ uses a five step, sequential analysis to determine whether a claimant qualifies as disabled. If at any step in this analysis it becomes clear that the claimant is not disabled, the analysis will end, and there is no need to proceed to the next step. The first step is to determine

whether the claimant is engaged in substantial gainful activity. If so, then he does not qualify as disabled, despite any impairment he might have. If he is not engaged in substantial gainful activity, then, at the second step, the ALJ determines whether the impairment from which the claimant suffers is severe, and whether such impairment meets the 12 month duration requirement. 20 C.F.R. § 416.920(a)(4)(ii). Only those impairments that rise to the level of being medically severe qualify as disabilities. Step three requires the ALJ to compare the claimant's severe impairment to the requirements of one in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The impairment must also meet the minimum 12 month durational requirement. 20 C.F.R. § 416.920(a)(4)(iii). At steps four and five, the ALJ must then determine the claimant's Residual Functional Capacity ("RFC"). A claimant's RFC is the most work he can do considering all of his impairments. 20 C.F.R. § 404.1545(a)(1); Social Security Ruling ("SSR") 96-8p. At step four, the ALJ must determine, taking all the claimant's impairments together, both severe and non-severe, whether the claimant is capable of performing his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If he is capable of such work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If he is not capable, step five requires a determination of whether the claimant can perform any other work in the relevant economy, considering all of his impairments. 20 C.F.R. § 416.920(a)(4)(v). The burden of proof at the first four steps lies with the claimant. If the claimant provides enough evidence to support his claims, the burden of proof will then shift to the Commissioner to provide evidence at step five. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

The Appeals Council denied review of the ALJ's decision in this case. Therefore, the ALJ's findings became the findings of the Commissioner. *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). The Court granted judicial review of the Commissioner's decision, pursuant

to 42 U.S.C. § 405(g). The Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Harris v. Barnhart*, 219 F. Supp. 2d 996, 972 (E.D. Wis. 2002) (citing *Binion on Behalf of Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). However, it is the duty of the Court to review the ALJ's decision to ensure that her findings are supported by substantial evidence and that no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In assessing the validity of the ALJ's reasoning and analysis, this Court will evaluate whether the ALJ's decision "demonstrate[s] the path of her reasoning," as "the evidence must lead logically to her conclusion." *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996) (citing *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (per curiam) (additional citation omitted). The ALJ "need not evaluate in writing every piece of testimony submitted." *Carlson*, 999 F.2d at 181. However, "the ALJ's decision must be based upon consideration of all of the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Furthermore, the ALJ's justification of her decision need only be minimal if it is legitimate. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). If the Court finds that the ALJ has committed an error of law, "reversal is required, without regard to the volume of evidence in support of the factual findings." *Harris v. Barnhart*, 219 F. Supp. 2d 996, 973 (E.D. Wis. 2002).

### III. THE ALJ'S DECISION

The ALJ decided the following. Mr. Reynolds meets the insured status requirements of the Social Security Act for the purposes of DIB through December 31, 2012. Therefore, he would be permitted to receive DIB if he were found to be disabled. At step one, the ALJ

determined Mr. Reynolds has not engaged in substantial gainful activity since the alleged onset date of his disability, September 1, 2007. At step two, the ALJ found that Mr. Reynolds has the following severe physical impairments: degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine with radiculopathy, congenital stationary hip, and obesity. The ALJ found that Mr. Reynolds has the following non-severe physical impairments: hypertriglyceridemia, vitamin D deficiency, hypertension, and nicotine dependence. The ALJ also found that Mr. Reynolds has the following non-severe mental impairments: depression, anxiety bipolar disorder unspecified, and cannabis dependence. The ALJ concluded that Mr. Reynolds only has mild, if any, restrictions in activities of daily life and social functioning. Considering all of his mental impairments and limitations, according to the ALJ, Mr. Reynolds only has mild difficulties with concentration, persistence, or pace, and has had no episodes of decompensation. At step three, the ALJ found that Mr. Reynolds does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. The ALJ concluded that Mr. Reynolds has a RFC to perform a range of light work, that includes: lifting, carrying, pushing and pulling twenty pounds occasionally and ten pounds frequently; standing and walking each for only one hour at a time, for a total of six hours in an eight hour workday; sitting for only one hour at a time, for a total of six hours in an eight hour work day; no climbing of ladders, ropes or scaffolds; no crouching, kneeling or crawling; occasional climbing of ramps or stairs; occasional balancing; occasional stooping, but no repetitive stooping below the waist; no exposure to vibration; no repetitive rotation flexion or extension of the neck; avoiding concentrated exposure to unprotected heights and dangerous machinery; and work that allows an individual to be off task five percent of the day, in addition to regularly scheduled breaks. (Filing No. 14-2, at ECF

pp. 19, 24).  At step four, the ALJ determined that Mr. Reynolds is unable to perform any past relevant work.  At step five, the ALJ found, considering Mr. Reynolds' age, education, work experience, and RFC, that there are jobs that exist in significant numbers in the national economy that he is capable of performing. Therefore, pursuant to 42 U.S.C. § 423(d)(2)(A), the ALJ concluded that Mr. Reynolds was not disabled from the alleged date of onset through the date of the ALJ's decision.

## IV. DISCUSSION

Mr. Reynolds raises two issues in his appeal.  First, he argues the ALJ failed to fully develop the record and therefore relied on improper and incomplete evidence in making her decision.  Second, Mr. Reynolds argues the ALJ's decision wrongfully equates activities of daily living to the ability to engage in full-time work.  Mr. Reynolds requests that, due to these alleged errors, he should be awarded DBI and SSI benefits or, in the alternative, that this case be remanded for further administrative proceedings.

**A.  The ALJ adequately developed the record and relied on sufficient evidence in making her decision.**

Mr. Reynolds argues that the ALJ failed to fully develop the record and did not obtain all of the relevant information required to make an informed decision in this case.  In her decision, the ALJ points out that there is "little evidence of record" concerning Mr. Reynolds' impairments (Filing No. 14-2, at ECF p. 20).  She notes that Mr. Reynolds did not seek medical treatment during the time between the alleged onset date of his disability in September 2007 through 2010, nor did he follow Dr. Safadi's instructions to seek follow up treatment after his consultative examination.  The ALJ also found it suspicious that with impairments of the level of severity described by Mr. Reynolds, he had no record of emergency room visits or treatment from a free clinic.  Mr. Reynolds argues that because the record was lacking in this respect, the

9

ALJ had a duty to develop it further, and she allegedly did not. Mr. Reynolds alleges the ALJ was required to discover why he did not seek medical treatment before making her decision, and she failed to do so. He also contends that the ALJ did not send him to doctors to investigate his claims of disability, despite her suspicion and the fact that the record was lacking.

The Court is not persuaded. As an initial matter, Mr. Reynolds has applied an incorrect standard of performance to the ALJ. Mr. Reynolds cites in his argument to the case *Binion v. Shalala*, in which Binion, a pro se litigant, argued that the ALJ failed to fully develop the record in her case and, therefore, did not rely on substantial evidence in making the decision. 13 F.3d 243, 247 (7th Cir. 1994). The court in *Binion* found that an ALJ who is working with a pro se litigant has a "heightened duty to 'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* at 245 (quoting *Smith*, 587 F.2d at 860). Mr. Reynolds argues that the ALJ in this case should be held to the standard set forth in *Binion*. However, Mr. Reynolds was represented by counsel in his hearing before the ALJ. The Seventh Circuit has held that an ALJ is "entitled to assume" that a claimant represented by counsel has made his "strongest case for benefits." *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007).

Furthermore, the Seventh Circuit has consistently held that the standard to which an ALJ is held is limited to developing a "full and fair record," in order to make a fully informed decision. *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991) (citing *Smith*, 587 F.2d at 860). Therefore, no heightened duty exists in this case, and the ALJ will be held to the required standard of developing a "full and fair" record. While the ALJ must develop a full and fair record, it is the claimant's burden to prove that he is disabled. *See* 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he furnishes such medical and

other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 416.912(a); 20 C.F.R. § 404.1512(a).

Similarly, Mr. Reynolds has not shown how or in what way the ALJ's failure to inquire about the gaps in his treatment history had a negative impact on the ALJ's ultimate determination. From Mr. Reynolds' citation to the *Brennan-Kenyon* case, it appears that he takes issue with the ALJ's credibility determination. Brennan-Kenyon v Barnhart, 252 F.Supp. 2d 681, 696 (N.D. Ill. 2003). In the case *Brennan-Kenyon v. Barnhart*, the ALJ discredits Ms. Brennan-Kenyon for claiming that she had "incapacitating orthopedic pain," but not seeking any medical treatment for relief. *Brennan-Kenyon*, 252 F.Supp. 2d at 696-97. The court in *Brennan-Kenyon* held, citing to Social Security Rulings 96-7p, that an adjudicator must first consider a claimant's explanations, or other indications from the record, to provide insight into why she has not sought treatment before using this fact to draw conclusions about her credibility. *Id*.

Here, the ALJ did point out, although without explanation, Mr. Reynolds' lack of treatment in the record and made an appropriate and thorough credibility determination. The decision was based upon the record in its entirety, with a focus on consultative examinations (Filing No. 14-2, at ECF p. 20, 22, 24). In fact, the ALJ addressed all of the requirements for credibility determination listed under SSR 96-7p. (Filing No. 14-2, at ECF p. 20-23). According to SSR 96-7p, the ALJ is instructed to consider all of the following in assessing a claimant's credibility, in addition to "objective medical evidence":

    1. The individual's daily activities;

    2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

    3. Factors that precipitate and aggravate the symptoms;

11

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board);

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p.

In addressing the first factor, the ALJ discussed the discrepancy between Mr. Reynolds' reported symptoms and his activities with his children and in his home.[2] In addressing the second factor, the ALJ discussed the discrepancy between Mr. Reynolds' account of his pain and symptoms, and the medical findings. Mr. Reynolds' complaints of debilitating neck and back pain conflict with his documented ability to squat completely, to walk on his heels and toes, and the normal range of motion of his spine. Although Mr. Reynolds may be a slow learner, he was able to complete all memory exercises successfully when tested, and to follow instructions well. The objective medical evidence overall conflicts with Mr. Reynolds' statements regarding his pain, symptoms and other limitations. ([Filing No. 14-2, at ECF p. 20](Filing No. 14-2, at ECF p. 20).) In addressing the third factor, the ALJ considered Mr. Reynolds' aggravation of coping with obesity, coupled with his other symptoms. The ALJ accounted for this factor in her disability determination by further limiting Mr. Reynolds' exertion level for work. However, the ALJ gave weight to the medical findings which indicate that, despite his weight, he is still capable of working. This Court agrees

---

[2] The Court acknowledges that Mr. Reynolds disputes the ALJ's use of the fact that he is the primary caretaker of his children against him in determining his credibility. The Court will address this issue in the following section. Here, however, the factor of Mr. Reynolds' daily activities is just one of many factors in determining Mr. Reynolds' credibility. Even if the ALJ would have considered Mr. Reynolds to be completely limited in his daily activities, the other, multiple factors for consideration would outweigh the former, and would still support the ALJ's credibility determination.

12

with the ALJ's assertion that disability requires more than the ability to work without pain or discomfort. ([Filing No. 14-2, at ECF p. 24](#).)

In addressing the fourth factor, the ALJ stated that there is no indication in the record of Mr. Reynolds' medication limiting him in any way. With regard to the fifth factor, the ALJ addressed the issue of the lack of treatment in the record until 2011, and found this gap to be suspicious. Addressing the sixth factor, the ALJ discussed Mr. Reynolds' daily use of marijuana to cope with pain. It is evident from the above analysis that the ALJ did not base her credibility determination in any significant way on Mr. Reynolds' lack of treatment in the record. The ALJ made a logical, fully developed decision, addressing all of the necessary criteria, and meeting her legal burden by supporting her decision with substantial medical evidence.

Moreover, the mere idea that more evidence would result in a different credibility or disability determination is not enough. The 7th Circuit has held that "mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand of a social security disability case on grounds that the ALJ failed to fully and fairly develop the record. Instead a claimant must set forth specific, relevant facts—such as medical evidence—that the ALJ did not consider." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (citing *Binion*, 13 F.3d at 246) (additional citation omitted). Additionally, an omission of evidence is only significant if it is prejudicial. *Nelson*, 131 F.3d at 1235.

To the contrary, Mr. Reynolds has not pointed to any specific or relevant evidence that is missing from the record. He offers mere speculation that inquiry into his reason for not seeking medical treatment for his back problems would have tipped the scales in the ALJ's credibility determination. As the ALJ relied most heavily on the consultative examinations in making her decision, additional evidence pertaining to Mr. Reynolds' reasons for not seeking treatment

would not be prejudicial. This evidence is sufficient to support the ALJ's finding regarding Mr. Reynolds' credibility. Although the ALJ did address Mr. Reynolds' lack of treatment, and did not inquire as to why it was lacking, the law does not support a remand without specific, prejudicial evidence omitted. *Nelms*, 553 F.3d at 1098. Mr. Reynolds has provided no such evidence.

Mr. Reynolds also argues that although the ALJ questioned the validity of his complaints, she chose to "completely ignore the possibility of any real objective impairment by refusing to send the claimant for any consultative examinations." (Filing No. 18, at ECF p. 12.) From the record, it is clear that this is not true. The ALJ sent Mr. Reynolds to consultative examinations for both his alleged mental and physical impairments. In March 2010, the ALJ sent Mr. Reynolds to Dr. Hoye for a psychological examination. (Filing No. 14-2, at ECF p. 15.) In February of 2010, the ALJ sent Mr. Reynolds to Dr. Safadi for a physical examination. (Filing No. 14-2, at ECF p. 20-21.) In March of 2011, the ALJ sent Mr. Reynolds to obtain objective images of his spine. (Filing No. 14-2, at ECF p. 21.) The ALJ also solicited the opinion of Dr. Dobson, a state agency medical consultant. (Filing No. 14-2, at ECF p. 22.) The ALJ referenced the medical findings obtained from these visits many times in her decision. (Filing No. 14-2, at ECF pp. 15, 16, 17, 18, 19, 20, 21, 22, 24.) Mr. Reynolds' allegations in this regard are not supported by the objective evidence in the record.

**B.     The decision does not wrongfully equate activities of daily living to the ability to engage in full time work.**

Next, Mr. Reynolds argues the ALJ erred in concluding that he is capable of engaging in substantial gainful employment because he is capable of being the primary caretaker of his two children, and performing some household chores with the help of his family. The Seventh Circuit has held that the imperative nature of taking care of one's children may "impel [one] to

14

heroic efforts," and does not necessarily negate the finding that one has a disability. *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005). The Court agrees that it is improper to infer that one is capable of engaging in substantial gainful activity simply because one is the primary caretaker of their children. The Seventh Circuit has also held that the ability to perform minimal daily activities does not imply the ability to engage in substantial gainful activity. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (citing *Thompson*, 987 F.2d at 1490). Therefore, the ALJ would be mistaken to conclude that Mr. Reynolds' ability to care for children at home, to whatever extent, negates his potential disability status. However, the ALJ does not equate Mr. Reynolds' abilities in taking care of his household with his ability to engage in substantial gainful activity. Instead, the ALJ considered Mr. Reynolds' account of his abilities to perform daily activities as one factor of many in determining his credibility. The ALJ made an overall credibility determination, relying on substantial evidence, and assessing all of the relevant and requisite factors for determination.

As was addressed in the issue above, the Seventh Circuit requires thorough investigation into a claimant's credibility. The court in *Clifford* states:

> If the allegation of pain is not supported by the objective medical evidence in the file and the claimant indicates that pain is a significant factor of his or her alleged inability to work, then the ALJ must obtain detailed descriptions of claimant's daily activities by directing specific inquiries about the pain and its effects to the claimant. She must investigate all avenues presented that relate to pain, including claimant's prior work record, information and observations by treating physicians, examining physicians, and third parties. Factors that must be considered include the nature and intensity of claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for relief of pain, functional restrictions, and the claimant's daily activities.

*Clifford*, 227 F.3d at 872 (citing *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994)). In *Clifford*, the court held that the ALJ was in error for neglecting to consider certain medical evidence, and instead, relying on the claimant's minimal daily activities as "substantial evidence that she does

15

not suffer disabling pain." *Id*. The court ruled that "this [reliance] is insufficient because minimal daily activities, such as those in issue, do not establish that a person is capable of engaging in substantial physical activity." *Id.* The SSR guidelines indicate, however, that medical records contain objective evidence which can be "extremely valuable," though not determinative, in determining one's capability of engaging in substantial gainful employment. SSR 96-7p.

Here, the ALJ found that while Mr. Reynolds' medically determinable impairments could reasonably be expected to cause the alleged symptoms, Mr. Reynolds' statements on intensity, persistence and limiting effects were not credible to the extent they are inconsistent with the RFC. ([Filing No. 14-2, at EFC p. 20](#).) For example, the ALJ noted that although Mr. Reynolds reported he could not walk or stand for extended periods of time, the medical records provided no indication that he was unable to ambulate effectively. ([Filing No. 14-2, at ECF p. 18](#).) And, although Mr. Reynolds complained of musculoskeletal difficulties and neck and back pain, there are no corresponding clinical findings of such symptoms in the record. Rather, at the consultative examination he was able to squat completely, walk on his heels and toes and tandem walk. Neurologically he was intact, with full muscle strength and tone, normal reflexes, and intact sensation. ([Filing No. 14-7, at ECF p. 3](#).) Again, there are no records of any emergency room visits or free clinics or other methods of treatment (other than Mr. Reynolds' reported social and self-medicated use of marijuana) for four of the five years under consideration. The Court finds the ALJ made a logical conclusion, based on inconsistencies with substantial medical evidence, that Mr. Reynolds' account of his symptoms is not completely credible. The medical records, however, are not determinative, and according to *Clifford*, need to be considered in context with other relevant factors. *Clifford*, 227 F.3d at 872.

16

In this case, the ALJ rightly factored into her consideration aggravation from Mr. Reynolds' obesity, and the findings of the x-rays in making her determination. She credits Mr. Reynolds with experiencing musculoskeletal pains, even though there is no medical evidence of it. The ALJ then accounted for this pain by limiting the exertion level of his prescribed work. The ALJ also considered that Mr. Reynolds' pain is likely due to the degenerative changes evidenced by objective images, and noted however, that "disability requires more than just the inability to work without pain". ([Filing No. 14-2, at ECF p. 24](Filing No. 14-2, at ECF p. 24).) It is clear that the ALJ did not rely solely upon her view of Mr. Reynolds' daily activities in making her decision, but made a thorough and fair determination based upon all of the required factors.

The Court may not reject an ALJ's credibility finding unless it is "patently wrong." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010) (citing *Castile v. Astrue*, 617 F.3d 923, 928–29 (7th Cir. 2010)). While it may have been improper to factor Mr. Reynolds' ability to care for his children and to perform minimal chores into her credibility decision, the ALJ's credibility and overall disability determination was based primarily on contradictions with and support from substantial evidence from the medical record. Moreover, "because the ALJ is in the best position to observe witnesses, we will not disturb her credibility determinations as long as they find some support in the record." *Dixon*, 270 F.3d 1178-79; *see also Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994). Due to the fact that the ALJ's credibility finding was based upon substantial evidence, the Court finds that the ALJ made no error that warrants reversal or remand.

## V. <u>CONCLUSION</u>

For the foregoing reasons, the Court **AFFIRMS** the Commissioner's decision denying benefits. Mr. Reynolds' appeal is **DISMISSED**.

**SO ORDERED**.

Date: _____

DISTRIBUTION:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov